UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MICHAEL MIKUS ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 13-CV-120-JED-TLW |
| ) | |
| STANLEY GLANZ, SHERIFF OF TULSA ) | |
| COUNTY, et al., ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

The Court has for its consideration defendant Stanley Glanz's Motion to Dismiss Complaint and Brief in Support (Doc. 6). Glanz seeks dismissal of plaintiff's claims against him, in both his individual and official capacities, pursuant to Fed. R. Civ. P. 12(b)(6). Glanz also seeks dismissal of plaintiff's request for punitive damages against Glanz in his official capacity.

### BACKGROUND

Plaintiff Michael Mikus[1] was incarcerated at the David L. Moss Criminal Justice Center (the "Tulsa County Jail") from November 4, 2009, to January 13, 2010. At some point near the beginning of his incarceration, Mikus was physically assaulted by a fellow inmate, which caused

---

[1] Plaintiff's pleadings have repeatedly captioned his name as "Michael Milkus" and he is referred to throughout his Amended Complaint (Doc. 1) as such. Glanz seeks dismissal under Fed. R. Civ. P. 10 on this basis, arguing that plaintiff is using a fictitious name. Plaintiff has responded that the misspelling was nothing more than an "inadvertent scrivenor's [sic] error." (Doc. 11, at 1 n.1). While this is a fairly significant oversight, it certainly does not warrant dismissal under Rule 10, under which John Doe defendants are typically dismissed. In this type of situation, courts routinely correct name spellings in case captions where it is just and expedient to do so. *See, e.g., McKinley v. Maddox*, 2011 WL 4526765 (W.D. Okla. Aug. 8, 2011) *report and recommendation adopted*, 2011 WL 4527897 (W.D. Okla. Sept. 28, 2011) *rev'd on unrelated grounds*, 493 F. App'x 928 (10th Cir. 2012). As such, the case caption has been amended to correct the plaintiff's oversight. All future pleadings in this case should reflect the corrected caption.

an injury to his left eye. He notified jail personnel of his need for medical attention and was seen by the jail's nursing staff, who plaintiff alleges conducted a minimal screening and sent him on his way. He further alleges that he requested to see a doctor but he was denied that opportunity. Thereafter, Mikus states that he reported to medical staff and Tulsa County Jail personnel that he was experiencing blindness and auras in his vision. Nevertheless, he was never examined by a physician.

At least a month after his injury, Mikus was transferred into the custody of the Oklahoma Department of Corrections. At that time, he was seen by a physician who recognized that Mikus had suffered a detached retina and that surgery was needed immediately. Mikus underwent several eye surgeries thereafter. He alleges that, because of the extended delay in receiving the necessary surgeries, the surgeries were largely unsuccessful and he suffers from loss of vision and glaucoma. Mikus asserts that Glanz and the other defendants violated his civil rights by failing to render adequate medical care and cites the policies, practices, and/or customs at the Tulsa County Jail as being the cause of his injuries.

Mikus brought this civil rights action in Tulsa County district court pursuant to 42 U.S.C. § 1983 alleging claims for cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution against defendant Glanz and negligence against defendants Correctional Healthcare Management of Oklahoma, Inc., Correctional Healthcare Management Inc., and Correctional Healthcare Companies, Inc. On February 26, 2013, Glanz removed the case to this Court pursuant to 28 U.S.C. §§ 1441(a), 1443, and 1446. Glanz now seeks dismissal of Mikus' claims against him.

## **S**TANDARDS

In considering a Rule 12(b)(6) dismissal motion, a court must determine whether the plaintiff has stated a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). The Federal Rules of Civil Procedure require "a short and plain statement of the claim to show that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The standard does "not require a heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face," and the factual allegations "must be enough to raise a right to relief above the speculative level." *Id*. at 555-56, 570 (citations omitted). "Asking for plausible grounds . . . does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]. And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id*. at 556. "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 562.

*Twombly* articulated the pleading standard for all civil actions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded factual allegations of the complaint as true, even if doubtful, and must construe the allegations in the light most favorable to the claimant. *See Twombly*, 550 U.S. at 555; *Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007).

## DISCUSSION

Glanz argues that Mikus has not stated a valid § 1983 claim against him in his official or individual capacity because Mikus has not alleged any underlying constitutional violation by Glanz's subordinates. Glanz also argues that, without this underlying allegation of constitutional violation, Glanz cannot be held liable for any alleged inadequate training, supervision, and/or policies.

Section 1983 provides a claim for relief against state actors for violation of a plaintiff's federal rights. *Becker v. Kroll*, 494 F.3d 904, 914 (10th Cir. 2007). To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Anderson v. Suiters*, 499 F.3d 1228, 1232-33 (10th Cir. 2007). In the case of a municipal entity, the "under color of state law" element requires that the constitutional deprivation occurred pursuant to official policy or custom. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). A municipal entity may be held liable for an act it has officially sanctioned, or for the actions of an official with final policymaking authority. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 482-83 (1986); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 127-28 (1988). A plaintiff "must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998) (quoting *Board of County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 404 (1997)). A claim against a state actor in his or her official capacity "is essentially another way of pleading an action against the county or municipality", and is analyzed under the standard

applicable to § 1983 claims against municipalities or counties. *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010).

Mikus has adequately alleged an underlying constitutional violation by Sherriff Glanz's subordinates. Glanz's argument that underlying unconstitutional actions have not been alleged suggests a misunderstanding about the nature of Mikus' allegations. Mikus' Amended Complaint asserts that he suffered a severe permanent injury to his eye as a result of the *inactions* of jail employees and medical staff stemming from policies and practices promulgated by Glanz. More precisely, Mikus alleges, among other things, that his lack of care was the result of Glanz's failure to implement adequate physical health policies which provide timely medical care to inmates in need. For example, Mikus' Amended Complaint states:

> Defendants' failures to provide prompt and adequate care in the face of known and substantial risks to Plaintiff's health and well being include, inter alia: a failure to conduct appropriate medical assessments; a failure to create and implement appropriate medical treatment plans; a failure to promptly evaluate and transfer Plaintiff to an appropriate medical treatment facility; and a failure to take precautions to prevent Plaintiff from further injury.

(Doc. 1, at 6, ¶ 18). Mikus also alleges an absence of guidance for nurses and jail employees and a serious deficiency with respect to the policies and procedures for communication with inmates seeking medical care, such that inmates' complaints regarding their health go unanswered for extensive periods of time. Mikus cites these failures as the direct cause of the delay in treatment he experienced and the ultimate resulting permanent injury. Viewing the allegations of the Amended Complaint in their totality, Mikus has adequately alleged an underlying constitutional violation on the part of Glanz's subordinates such that liability can be sought against him.

In addition, Sherriff Glanz argues that he cannot be held individually liable because Mikus has not alleged personal involvement by Glanz with respect to Mikus' alleged injury. This, too, reflects a misapprehension of the nature of Mikus' claims. Mikus' individual capacity

5

claim is based upon supervisor liability. Tenth Circuit precedent is clear that, for the purpose of a § 1983 claim, "a sheriff is responsible for the proper management of the jail in his county and the conduct of his deputies." *Meade v. Grubbs*, 841 F.2d 1512, 1528 (10th Cir. 1988).

To establish a claim of supervisory liability under § 1983, a plaintiff must plead and prove that "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010). Here, the "requisite degree of culpability" is deliberate indifference. *Id*. at 1201; 1204-05. "Deliberate indifference" is defined as knowing and disregarding an excessive risk to an inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 827 (1994); *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). In *Wilson v. Seiter*, 501 U.S. 294 (1991), the Supreme Court clarified that deliberate indifference has two components: (1) an objective requirement that the pain or deprivation be sufficiently serious; and (2) a subjective requirement that the offending officials act with a sufficiently culpable state of mind. *Wilson*, 501 U.S. at 298-99. A delay in medical care constitutes a constitutional violation where the plaintiff can show that the delay resulted in substantial harm. *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001).

Viewing his allegations in the light most favorable to him, Mikus has sufficiently alleged a claim for supervisor liability under *Dodds*. As noted above, Mikus alleges that Glanz is responsible for implementing policies and procedures which create extensive delays in medical treatment, as well as inadequate care when it is given. Mikus alleges that he reported his health concern to jail personnel and medical staff but did not receive treatment until it was far too late. Mikus claims that he suffered severe injury as a result of the delay in medical treatment. Mikus

also specifically cites a causal link between his injury and the policies and procedures implemented by Glanz.  For example, Mikus alleges that the communication policy in place for reporting medical concerns to the jail results in serious delays in treatment, and indeed caused the delay he blames for his injuries.  Mikus also alleges that Glanz had actual knowledge of these deficiencies in the care and treatment of inmates.  For example, Mikus cites the statements of Pamela Hoisington, former director of the jail healthcare provider, who formally complained of the jail's inadequate healthcare policies.  Mikus further notes that, in August of 2009, the Oklahoma Department of Health notified Glanz that the jail's inadequate practices with respect to providing timely assessment and treatment of inmates were in conflict with jailing standards.  Mikus also contends that no change in policy or practice occurred in response to these complaints.  In light of the foregoing, the Court finds that Mikus has alleged facts sufficient to state § 1983 claims against Glanz in both his individual and official capacities.

Finally, Glanz requests that the Court dismiss Mikus' request for punitive damages against Glanz in his official capacity, as such recovery is not permitted against a municipality.

It is indeed well settled that a plaintiff may not recover punitive damages against a municipality under § 1983.  *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 270–71 (1981); *Youren v. Tintic School Dist.*, 343 F.3d 1296, 1307 (10th Cir. 2003).  However, in *Youren*, the Tenth Circuit stated that "[t]he fact that municipalities are immune from punitive damages does not, however, mean that individual officials sued in their official capacity are likewise immune."  *Id*. at 1296.  This statement by the court has repeatedly been called into question.  *See, e.g., Kerns v. Indep. Sch. Dist. No. 31 of Ottawa Cnty*., 13-CV-290-TCK-PJC, 2013 WL 5903632 (N.D. Okla. Oct. 31, 2013) (collecting cases which have declined to follow

7

*Youren* on this point).  Recently, in *Cross Continent Dev., LLC v. Town of Akron, Colo.*, No. 12-1391, 2013 WL 6334840 (10th Cir. Dec. 6, 2013), the Tenth Circuit discussed this issue:

> [W]e must adhere to prior rulings of our court in the absence of our court's issuance of an en banc decision overruling the prior panel decision. *In re Smith*, 10 F.3d 723, 724 (10th Cir.1993). We feel compelled, however, to note our agreement with McGuire's characterization of *Youren* as an anomalous outlier. After all, if "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity," *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) ("It is *not* a suit against the official personally, for the real party in interest is the entity." (emphasis in original)), and "a municipality is immune from punitive damages under 42 U.S.C. § 1983," *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981), then individuals sued in their official capacity should be immune from punitive damages as well.  The conclusion seems inescapable. Indeed, the force of this reasoning has led courts within our own circuit to ignore *Youren* when dismissing punitive damage claims in official-capacity § 1983 suits. *See, e.g., Fernandez v. Taos Mun. Sch. Bd. of Educ.*, 403 F.Supp.2d 1040, 1043 (D.N.M.2005) (Kelly, J., sitting by designation).

In other words, *Youren* remains binding precedent, but is not generally followed on this particular issue.  Because the Court needn't decide the issue of punitive damages at this stage of the proceeding, Glanz's request that Mikus' punitive damages request as to the official capacity claim is denied at this time.

**IT IS THEREFORE ORDERED** that defendant Stanley Glanz's Motion to Dismiss Complaint and Brief in Support (Doc. 6) is **denied**.

The parties are directed to file a joint status report within 21 days of the date of this Opinion and Order.  Thereafter, the Court will enter a scheduling order.

**SO ORDERED** this 4th day of March, 2014.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE