# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

MICHAEL MIKUS, )
        Plaintiff, )
) Case No. 13-CV-120-JED-JFJ
v. )
)
(1) CORRECTIONAL HEALTHCARE )
MANAGEMENT OF OKLAHOMA, INC.; )
(2) CORRECTIONAL HEALTHCARE )
MANAGEMENT, INC.; )
(3) CORRECTIONAL HEALTHCARE )
COMPANIES, INC. )
)
        Defendant. )

## **OPINION & ORDER**

For the Court's consideration are two motions to dismiss: one filed by defendant Correctional Healthcare Companies, Inc. ("CHC") on its own behalf (Doc. 28) and one filed by CHC on behalf of defendants Correctional Healthcare Management, Inc. ("CHM") and Correctional Healthcare Management of Oklahoma, Inc. ("CHMO"). (Doc. 31).

**I.    Background**

Plaintiff Michael Mikus was incarcerated at the David L. Moss Criminal Justice Center (the "Tulsa County Jail") from November 4, 2009, to January 13, 2010. At some point near the beginning of his incarceration, Mikus was physically assaulted by a fellow inmate, which caused an injury to his left eye. He notified jail personnel of his need for medical attention and was seen by the jail's nursing staff, who plaintiff alleges conducted a minimal screening and sent him on his way. He further alleges that he requested to see a doctor but was denied the opportunity to see a physician. Mikus states that he reported to medical staff and Tulsa County Jail personnel that he was experiencing blindness and auras in his vision.

At least a month after his injury, Mikus was transferred into the custody of the Oklahoma Department of Corrections. At that time, he was seen by a physician who recognized that Mikus had suffered a detached retina and that surgery was immediately necessary. Mikus underwent several surgeries thereafter. Mikus alleges that, because of the extended delay in receiving the necessary surgeries, the surgeries were largely unsuccessful and he now suffers from loss of vision and glaucoma. Mikus alleges that the defendants violated his civil rights by failing to render adequate medical care, and he cites the policies, practices, and/or customs at the Tulsa County Jail as being the cause of his injuries.

Mikus initially filed suit against CHMO and Stanley Glanz, then-Sheriff of Tulsa County, on November 1, 2011, in the Tulsa County District Court. (*See* Tulsa County District Court Case No. CJ-2011-6765). The case was dismissed without prejudice on February 6, 2012. Mikus again filed suit in the Tulsa County District Court on February 6, 2013, naming the same two defendants as before. The case was removed to this Court, and Mikus filed an Amended Complaint (Doc. 1) on February 26, 2013. The Amended Complaint added two additional defendants: CHC and CHM.

On October 27, 2015, an Agreed Judgment was entered as to defendant Glanz. (Doc. 22). The plaintiff's claims against the remaining defendants include a claim of cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the U.S. Constitution, pursuant to 42 U.S.C. § 1983, and negligence. CHC now seeks dismissal of the Amended Complaint on its own behalf and on behalf of the CHM and CHMO.

II.   **CHM/CHMO/CHC**

In its motion on behalf of CHM and CHMO, CHC asserts that the other two entities have merged into CHC and no longer exist in their own right. (*See* Doc. 31 at 9-10).[1] CHC has provided

---

[1] The page numbers in the Opinion reference those in the header of each document.

a copy of the Statement of Merger that indicates CHMI and CHMO merged into CHC with the effective date of December 31, 2011. (Doc. 31-1). CHC also provided to the Court Certificates of Withdrawal, signed by the Oklahoma Secretary of State, stating that CHMI and CHMO have withdrawn from doing business in Oklahoma. (Doc. 31-2, Doc. 31-3).

This argument has been made in several other cases before this Court, (*see* Doc. 18 in Case No. 13-CV-111-JED; Doc. 22 in Case No. 13-CV-315-JED; Doc. 15 in Case No. 14-CV-569-JED), and the undersigned has previously declined to grant dismissals on this basis. In the March 28, 2014, unpublished decision in *Revilla v. Glanz*, this Court stated:

> [P]laintiffs note that the CHM defendants' argument that they ceased to exist as of December 31, 2011 is inconsistent with a number of Corporate Disclosure Statements filed by those defendants in this Court after December 31, 2011. (*See* Doc. 17 and 18 in Case No. 11–CV–720; Doc. 13 in Case No. 11–CV–755; Doc. 24 in Case No. 12–CV–68; Doc. 76 in Case No. 11–CV–457; and Doc. 20 in Case No. 11–CV–696). The Court also notes that CHMO filed an Answer in another case in this Court on May 20, 2013, almost 17 months after it allegedly ceased to exist. (Doc. 22 in Case No. 13–CV–112). In yet another case, CHMO filed an Answer on June 17, 2013, *after* plaintiffs initiated this lawsuit. (*See* Doc. 6 in Case No. 13–CV–303). Plaintiffs also assert that dismissal of the CHM defendants is improper because CHMO entered into an amendment to the Health Services Agreement for the Tulsa County Jail, which was effective July 1, 2012, six months *after* the CHM defendants assert that they ceased to exist. (Doc. 357). That amendment was signed on behalf of both CHM and CHC on June 27, 2012, and the recitals to the amendment provided that "CHMO as part of its corporate re-branding has merged into [CHC]; and . . . [CHC] and CHMO have common corporate ownership, officers and directors." (*Id.*).
>
> The Court recognizes that the Colorado statute appears to support the CHM defendants' argument. However, the CHM defendants have not explained the inconsistencies in their representations to the Court in filings in other cases, nor have they provided any on point legal authority to support their argument for dismissal where the allegedly non-existent entities continued to hold themselves out as existing entities after they merged. At this time, the Court does not have enough information to determine whether the exclusion or inclusion of the CHM defendants is appropriate in this case.

3

*Revilla v. Glanz*, No. 13-CV-315-JED, 2014 WL 1056694, at *1 (N.D. Okla. Mar. 18, 2014) (unpublished).

In the *Revilla* decision, the Court denied the dismissal motion, without prejudice, and directed that "[s]hould the CHM defendants wish to reassert a dispositive motion on this issue at a later date, they should include an explanation for the discrepancies in their post-merger representations to the Court regarding their status as separate existing entities, and they also shall provide legal authorities supporting their argument for dismissal on the grounds asserted." *Id*. In a later filing in the *Revilla* case, CHC has attempted to explain these inconsistencies by pointing out that the other Northern District cases identified by the Court in its March 28, 2014 Order involved injuries that preceded the date of the merger. (*See* Doc. 250 in Case No. 13-CV-315-JED, at 6). Because the alleged injury to Michael Mikus in the present case also occurred before the date of the merger, this argument is inapplicable here.

CHC further argues in the *Revilla* filing that the CHM defendants were initially represented by different counsel in those other six cases. (*Id.*). Yet, in *Cox v. Glanz*, one of CHC's current counsel, Sean P. Snider, filed a motion for summary judgment on February 28, 2013, on behalf of CHC, CHM, and CHMO without once mentioning that CHM and CHMO had supposedly ceased to exist more than a year prior. (*See* Doc. 187 in Case No. 11-CV-457-JED).

Most notably, CHC asserts in the *Revilla* filing that "CHC assumed all legal liabilities and obligations of CHMO and CHM when the latter merged in CHC." (Doc. 250 in Case No. 13-CV-315-JED, at 9). Referring to one of the *Revilla* plaintiffs, CHC argues that any recovery may be recouped from CHC; "[t]hus, no injustice will result by appropriately ruling that CHM and CHMO's liabilities have been assumed by CHC as a matter of law." (*Id*. at 10). Yet, the Court observes that CHC's first argument in its own motion to dismiss in this case is that plaintiff's

4

§ 1983 claim against CHC must be dismissed for failure to specifically name CHC (as opposed to CHMO) as a defendant until after the applicable statute of limitations expired. (*See* Doc. 28 at 8-10). This position strikes the Court as inconsistent with CHC's assurances in *Revilla*. It appears that the dismissal of Mikus' § 1983 claims against CHM and CHMO is, in fact, intended to prejudice Mikus and leave him without means of relief. The Court is not inclined to allow the confusion over these corporate entities to become an escape hatch in this case; thus, CHM and CHMO defendants will not be excluded from this case on the basis of their merger into CHC unless and until the Court is persuaded that doing so would not unduly prejudice the plaintiff.[2]

Furthermore, the Court rejects the argument that the plaintiff's § 1983 claim against CHC is barred by the statute of limitations. The U.S. Supreme Court has held that "the forum state's personal injury statute of limitations should be applied to all § 1983 claims." *Blake v. Dickason*, 997 F.2d 749, 750 (10th Cir. 1993) (citing *Wilson v. Garcia*, 471 U.S. 261, 280 (1985)). "[W]here state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions." *Owens v. Okure*, 488 U.S. 235, 249-50 (1989). The applicable statute of limitations, then, is two years, as set forth in *Okla. Stat.* tit. 12, § 95(3). *See Burkley v. Corr. Healthcare Mgmt. of Okla.*, 141 F. App'x 714, 715 (10th Cir. 2005) (unpublished).

"A civil rights action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Baker v. Bd. of Regents of State of Kan.*, 991 F.2d 628, 632 (10th Cir. 1993). Because the alleged injury in this case occurred between November 4, 2009, and

---

[2] The Court similarly declines to dismiss the plaintiff's claims against CHM and CHMO based on failure to obtain proper service. If, as CHC insists, CHM and CHMO no longer exist, then service upon CHC as the successor corporation was proper.

January 13, 2010—when Mikus was incarcerated at the Tulsa County Jail—the two-year limitation period expired, at the latest, on January 13, 2012.

Yet, a federal court handling a § 1983 claim must also apply the forum state's relevant tolling provisions. *See Hardin v. Straub*, 490 U.S. 536, 538 (1989). Oklahoma has a savings statute that provides as follows:

> If any action is commenced within due time, and a judgment thereon for the plaintiff is reversed, or if the plaintiff fail in such action otherwise than upon the merits, the plaintiff . . . may commence a new action within one (1) year after the reversal or failure although the time limit for commencing the action shall have expired before the new action is filed.

*Okla. Stat.* tit. 12, § 100. It is undisputed that Mikus filed his original action before the statute of limitations expired. Similarly, it is clear that the first dismissal was not on the merits of the case. (*See* Doc. 31-4). Thus, Mikus had an additional year to bring a new action under this savings statute.

The issue presented by CHC is that CHC itself was not named as a defendant until the plaintiff filed his Amended Complaint on February 26, 2013. The Oklahoma savings statute requires the second suit to "allege substantially the same cause of action and feature substantially the same parties as the first one." *Clark v. Phillips Petroleum*, 677 P.2d 1092, 1095 (Okla. Civ. App. 1984) (citing *Haught v. Cont'l Oil Co.*, 136 P.2d 691 (1943)). A plaintiff, for example, may refile against a successor corporation when the successor has acquired the assets and assumed the liabilities of the originally named company. *Id*. This is allowed because there is an "identity of interest" between the first corporation and the successor. *See Nusbaum v. Knobbe*, 23 P.3d 302, 305 (Okla. Civ. App. 2001). In this case, if what CHC claims about the merger of the CHM defendants into CHC is accurate, then the plaintiff could properly join CHC, due to its identity of interest with the originally-named defendant.

CHC also asserts that claims against CHM must be dismissed because CHM was not originally included as a defendant in the plaintiff's suit. The Court is not persuaded by this argument and, instead, finds that the February 26, 2013 amendment to the plaintiff's complaint was permissible under Fed. R. Civ. P. 20(a)(2) and 15(c).

Under Fed. R. Civ. P. 20(a), defendants may be joined in one action if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." In reviewing the Amended Complaint, it is clear that the claims against CHMO, CHM, and CHC are "asserted against them jointly, severally, or in the alternative" and that these claims arise out of the same series of alleged occurrences. In fact, in setting forth the factual allegations and causes of actions, the Amended Complaint repeatedly groups these defendants together as "CHMO/CHM/CHC."

Yet, this inquiry does not end at Rule 20(a) because "such joinder does not 'trump' the statute of limitations." *Thompson v. Dolgencorp, LLC*, 304 F.R.D. 641, 643 (E.D. Okla. 2015). The Court must also consider whether "relation back" under Rule 15(c)(1) applies in this case.

Rule 15(c)(1) provides as follows:

*When an Amendment Relates Back.* An amendment to a pleading relates back to the date of the original pleading when:

> (A) the law that provides the applicable statute of limitations allows relation back;
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

7

> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>
> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Relation back in this case turns on Rule 15(c)(1)(C). *See Krupski v. Costa Cociere S.p.A.*, 560 U.S. 538, 548 n.3 (2010) ("Rule 15(c)(1)(C) . . . is not limited to the circumstances of a plaintiff filing an amended complaint seeking to bring in a new defendant," but that is "the 'typical case' of Rule 15(c)(1)(C)'s applicability.").

Nevertheless, as set out above, the Court must first determine whether Rule 15(c)(1)(B) is satisfied. CHC does not dispute that the claims against the newly-designated defendant in question, CHM, arise out of the same conduct and occurrences set out in the original pleading. Instead, it seems clear to the Court that the claims in this case have always been tied to substantially the same factual allegations concerning the plaintiff's treatment at the Tulsa County Jail from November 4, 2009, until January 13, 2010.

Proceeding, then, to Rule 15(c)(1)(C)(i), the Court has no doubt that CHM received notice of this action when it was originally filed in 2011 and when it was refiled in 2013. First, CHM has consistently had the same legal counsel as CHMO and CHC in the cases before this Court. (*See, e.g.*, Case No. 11-CV-457-JED; Case No. 11-CV-720-JED). There is even evidence that, at some point, CHM and CHMO ceased to have separate boards of directors. (*See* Doc. 250-2 in Case No. 13-CV-315-JED [Donald Houston Dep., p. 52]). As such, the Court finds that CHM will not be prejudiced in defending this case on the merits.

The Court also finds that Rule 15(c)(1)(C)(ii) is satisfied here, as CHM should have known that the claims would have been brought against it, but for the confusion surrounding the

identit(ies) of the proper party-defendant(s). "A prospective defendant who legitimately believed that the limitations period had passed without any attempt to sue him has a strong interest in repose." *Krupski*, 560 U.S. at 550. However, "repose would be a windfall for a prospective defendant who understood, or who should have understood, that he escaped suit during the limitations period only because the plaintiff misunderstood a crucial fact about his identity." *Id*. As the Court has already discussed at length, there is significant confusion surrounding CHM, CHC, and CHMO. Contradicting representations made by defendants themselves have caused this confusion. For this reason, the Court finds that application of the relation back doctrine is appropriate here. CHM reasonably should have understood plaintiff's intent in filing the original complaint and should not have been surprised that the plaintiff later sought to amend his complaint to add CHM and CHC.

### III. Other Asserted Grounds for Dismissal of § 1983 Claims

The Court will now address the other arguments for dismissal of the plaintiff's § 1983 claims asserted in both motions to dismiss.

#### A. Legal Standards

To survive a motion under Rule 12(b)(6), a plaintiff must plead sufficient factual allegations 'to state a claim to relief that is plausible on its face.'" *Brokers' Choice of America, Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" does not satisfy the pleading standard. *Id*. (quoting *Twombly*, 550 U.S. at 557).

In ruling on a Rule 12(b)(6) motion, the court must liberally construe the pleadings, take all well-pleaded facts as true, and make all reasonable inferences in favor of the non-moving party. *Brokers' Choice of Am.*, 861 F.3d at 1105.

B.     **Constitutional Deprivation**

The argument is made in both motions to dismiss that the plaintiff has failed to allege facts sufficient to show that he suffered a constitutional deprivation. It is well established that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal citation omitted). In *Farmer v. Brennan*, the Supreme Court set forth a two-pronged inquiry that applies to deliberate indifference claims. 511 U.S. 825 (1994). "Under the objective inquiry, the alleged deprivation must be 'sufficiently serious' to constitute a deprivation of constitutional dimension." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) (quoting *Farmer*, 511 U.S. at 834). "In addition, under the subjective inquiry, the prison official must have a 'sufficiently culpable state of mind.'" *Id*. at 1230-31 (quoting *Farmer*, 511 U.S. at 834).

The subjective prong is satisfied "by showing that the defendant knew the plaintiff 'faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it.'" *Gray v. Geo Grp., Inc.*, 727 F. App'x 940, 943 (10th Cir. 2018) (unpublished) (quoting *Martinez v. Beggs*, 563 F.3d 1082, 1089 (10th Cir. 2009)). "Allegations or evidence that the defendants were negligent in diagnosing or treating a medical condition does not meet this standard." *Id*. at 944 (citing *Estelle*, 429 U.S. at 106). "Nor does mere disagreement with the type of medical care provided establish an Eighth Amendment violation." *Id*. (citing *Callahan v. Poppell*, 471 F.3d 1155, 1160 (10th Cir. 2006)). "A claim is therefore actionable only in cases

10

where the need for additional treatment or referral to a medical specialist is obvious." *Self*, 439 F.3d at 1232.

In his Amended Complaint, the plaintiff alleges that the nursing staff employed by CHM/CHMO/CHC disregarded an obvious risk to the plaintiff by refusing to allow him to see a doctor and only conducting medical minimal screens, despite the plaintiff's reports of blindness and auras in his left eye. He alleges that he now suffers from loss of vision and glaucoma due to the delay in obtaining surgical treatment for his eye. CHC argues that the plaintiff's allegations show that CHC/CHMO/CHC "actively assessed Plaintiff's alleged injury" and, thus, cannot have acted with deliberate indifference toward him. (Doc. 28 at 13; Doc. 31 at 17). The Court disagrees. Though evidence that the CHC/CHMO/CHC employees made a "good faith effort to diagnose and treat" the plaintiff's condition would not support a finding of deliberate indifference, *see Mata v. Saiz*, 427 F.3d 745, 761 (10th Cir. 2005), the Court must make all reasonable inferences in favor of the non-moving plaintiff at this stage. Given the severity of the symptoms reported to the medical staff and the reported cause of the symptoms (a physical assault), the allegations support a reasonable inference that the medical staff's refusal to allow the plaintiff to be seen by a physician and failure to provide the plaintiff with medical care beyond performing minimal screenings constitute deliberate indifference. While the plaintiff may not ultimately be able to prove the necessary mental state or causal link to satisfy deliberate indifference, the Court holds that his allegations in the Amended Complaint plausibly make out a claim for constitutional deprivation.

In its reply briefs (Doc. 39, 40), CHC cites to the September 16, 2016 Opinion and Order dismissing the Amended Complaint in *Randolph v. Glanz*, Case No. 16-CV-154-CVE-TLW. In that case, Judge Claire V. Eagan found that the plaintiff had failed to plead facts sufficient to show that he suffered a constitutional deprivation. (*See* Doc. 40-1 at 7). Randolph, while detained at

the Tulsa County Jail, complained of a swollen left eye that caused pain and vision loss. He was promptly seen by a nurse that diagnosed him with pink eye and gave him antibiotic drops. When his symptoms worsened, he was seen by a doctor who diagnosed him with a corneal abrasion and gave him more antibiotic eye drops. After ten more days, during which the swelling, pain, and vision loss increased, the plaintiff was referred to an ophthalmologist. The ophthalmologist diagnosed him with acute iridocyclitis, panuveitis, corneal edema, vitritis, and posterior synechiae. The plaintiff alleged that he suffered 85% blindness in that eye after this course of events.

The Court finds *Randolph* to be easily distinguishable from the present case. Whereas Randolph was diagnosed and given antibiotic eye drops by both a nurse and, later, a physician, Mikus was only seen by a nurse and received **no treatment** beyond minimum medical screenings. Also unlike Randolph, Mikus was never referred to a specialist. Though the subjective component of deliberate indifference undoubtedly "presents a high evidentiary hurdle" for the plaintiff, *see Self*, 439 F.3d at 1232, the Court is persuaded that the plaintiff has alleged an actionable claim.

C.  **Substantial Harm**

The two dismissal motions also include the argument that plaintiff has failed to show he suffered any substantial harm due to the alleged failure and delay in providing medical treatment services. (Doc. 28 at 14-16; Doc. 31 at 17-19). "Delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference which results in substantial harm." *Mathison v. Wilson*, 719 F. App'x 806, 808 (10th Cir. 2017) (unpublished) (quoting *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993)). The Tenth Circuit has held that substantial harm includes "lifelong handicap, permanent loss, or considerable pain." *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001).

Here, the plaintiff alleges that the month-long delay in obtaining adequate medical care caused him to require additional medical treatment and to suffer from loss of vision and glaucoma. (Doc. 1 at ¶ 16). He alleges that the defendants' deliberate indifference to his serious medical needs caused him to experience, among other things, "permanent impairment" and "permanent disfigurement." (*Id*. at ¶ 31). Making all reasonable inferences in favor of the non-moving party, as is appropriate at this stage, the Court finds that the plaintiff has pleaded sufficient factual allegations to satisfy the "substantial harm" requirement.

D.   **Under Color of Law**

CHC also argues in the two dismissal motions that the plaintiff's allegations do not establish that CHM/CHMO/CHC was acting under color of state law for purposes of § 1983 liability. CHC asserts that the Amended Complaint does not show that these entities exerted influence over a state entity, substituted their judgment for that of a state actor, or participated in the decisions leading to the alleged deprivations of constitutional rights. (*See* Doc. 28 at 16-17; Doc. 31 at 19-21).

This argument has previously been made before this Court in *Sanders v. Glanz*, 138 F. Supp. 3d 1248, 1253-54 (N.D. Okla. 2015), and *Revilla v. Glanz*, 8 F. Supp. 3d 1336, 1337-39 (N.D. Okla. 2014). Each time, the Court has rejected this argument. As in *Sanders* and *Revilla*, the plaintiff in this case has specifically alleged that CHC, CHM, and CHMO were in part responsible for providing medical services and medication at the Jail and were additionally responsible, in part, for developing and implementing Jail policies regarding medical treatment. (Doc. 1 at ¶¶ 9-11, 42). The Court finds that these allegations are sufficient to plausibly allege that the defendants were acting under color of law for purposes of § 1983 liability. *See West v. Atkins*, 487 U.S. 42, 54 (1988) ("[A] physician employed by North Carolina to provide medical services

to state prison inmates, acted under color of state law for purposes of § 1983 when undertaking his duties in treating petitioner's injury. Such conduct is fairly attributable to the State."); *see also id*. at 56 ("Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights.").

In its reply briefs (Doc. 39, 40), CHC argues that this case differs from *Revilla* and *Sanders* because the plaintiff in this case did not specifically name an individual healthcare professional that allegedly acted under color of state law. However, CHC does not cite to—and the Court has been unable to find—case law suggesting that the *West* decision only applies to individual healthcare professionals and not corporate entities that are under contract to provide medical services at a county jail. *Cf. Evans v. Newton*, 382 U.S. 296, 299 (1966) ("[W]hen private individuals <u>or groups</u> are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations.") (emphasis added); *Spurlock v. Townes*, 661 F. App'x 536, 538 n. 2 (10th Cir. 2016) (unpublished) (citing *West* in refusing to question the parties' assumption that a private company operating a prison was acting under color of state law for § 1983 purposes).

### E. Municipal Liability Theory

The dismissal motions further assert that plaintiff cannot maintain a § 1983 claim against CHM/CHMO/CHC under a municipal liability theory. Municipal employers cannot be held liable under § 1983 on a *respondeat superior* theory. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691-92 (1978). To establish municipal liability, a plaintiff must demonstrate: (1) the existence of a municipal policy or custom by which the plaintiff was denied a constitutional right and (2) that the policy or custom was the moving force behind the constitutional deprivation. *Id*.

14

at 694-95. Several types of actions may constitute a municipal policy or custom, as explained by the Tenth Circuit in *Bryson v. City of Okla. City*:

> (1) "a formal regulation or policy statement"; (2) an informal custom "amoun[ting] to 'a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law'"; (3) "the decisions of employees with final policymaking authority"; (4) "the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval"; or (5) the "failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused."

627 F.3d 784, 788 (10th Cir. 2010) (quoting *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189-90 (10th Cir. 2010)).

Importantly, the Tenth Circuit and other Circuit Courts of Appeal have applied *Monell* to private entities acting under color of law that are sued under 42 U.S.C. § 1983. *See Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216, n.13 (10th Cir. 2003) (citing, *inter alia*, *Jackson v. Ill. Medi-Car Inc.*, 300 F.3d 760, 766 (7th Cir. 2002); *Burke v. N.D. Dep't of Corr. & Rehab.*, 294 F.3d 1043, 1044 (8th Cir. 2002), *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 729 (4th Cir. 1999); *Harvey v. Harvey*, 949 F.2d 1127, 1129-30 (11th Cir. 1992); *Rojas v. Alexander's Dep't Store*, 924 F.2d 406, 408-09 (2d Cir. 1990)).

CHC first argues that the plaintiff has failed to allege any specific underlying constitutional violation for which the defendants could be held liable. (*See* Doc. 28 at 19; Doc. 31 at 22). The Court disagrees. As discussed above, the Court finds that the Amended Complaint has sufficiently alleged that employees of CHM/CHMO/CHC demonstrated deliberate indifference to the plaintiff's serious medical needs in violation of the Eighth Amendment.

Citing *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986), CHC also argues that CHM/CHMO/CHC cannot be held liable under a municipal liability theory because none of these

entities have final decision-making authority for the Tulsa County Jail. However, *Pembaur* provided an *additional* method of establishing municipal liability beyond the settled method of showing that an entity's policy was the moving force behind the constitutional violation. *See, e.g.*, *Seifert v. Unified Gov't of Wyandotte Cty./Kansas City*, 779 F.3d 1141, 1159 (10th Cir. 2015) ("Under this standard, 'a municipality is responsible for both [1] actions taken by subordinate employees in conformance with preexisting official policies or customs and [2] actions taken by final policymakers, whose conduct can be no less described as the "official policy" of a municipality.'") (quoting *Simmons v. Uintah Health Care Special Dist.*, 506 F.3d 1281, 1284 (10th Cir. 2007)).

The Amended Complaint alleges that CHMO/CHM/CHC was charged with implementing and developing policies of the Tulsa County Sheriff's Department with respect to the medical care of inmates and shared responsibility to adequately train and supervise its employees. (Doc. 1 at ¶ 42). The Amended Complaint further alleges that CHMO/CHM/CHC maintained a policy, practice, and/or custom of providing untimely assessment, identification, and treatment of Jail inmates' medical and mental health needs, in disregard to known, obvious, and excessive risks to the inmates' health and safety. (*Id*. at ¶ 26). The plaintiff also alleges that CHMO/CHM/CHC had notice that its healthcare-related policies were deficient but, nonetheless, refused to take corrective action. (*Id*. at ¶¶ 25-26). Lastly, the Amended Complaint alleges that the policies, practices, and/or customs of CHM/CHMO/CHO directly and proximately caused the constitutional deprivation suffered by the plaintiff. (*Id*. at ¶¶ 43-46). The Court finds that these allegations assert a plausible § 1983 claim against CHMO/CHM/CHC based upon its alleged policies, customs, or practices under *Monell* and its progeny.

F.  **Vicarious Liability**

CHC, in its two motions, also argues that any constitutional claim against CHC/CHM/CHMO based on vicarious liability should be dismissed. (*See* Doc. 28 at 21; Doc. 31 at 24-25). The plaintiff has responded that he does not seek to impose *respondeat superior* liability on the defendants as to his § 1983 claims. As such, the Court finds this argument moot.

For the reasons discussed above, the dismissal motions (Doc. 28, 31) are **denied** as to the plaintiff's § 1983 claims against defendants CHM, CHMO, and CHC.

IV. **State Law Claims**

Lastly, the two dismissal motions set forth various arguments concerning the plaintiff's negligence claims against CHM, CHMO, and CHC. (*See* Doc. 28 at 22-28; Doc. 31 at 25-32). Because the Court finds the argument concerning the expiration of the statute of limitations to be meritorious, the Court will begin (and end) its analysis there.

The basis of both of the plaintiff's claims for relief is the CHM/CHMO/CHC's alleged failure to provide adequate medical care while the plaintiff was incarcerated at the Tulsa County Jail from November 4, 2009, to January 13, 2010. The plaintiff did not file his original petition until November 1, 2011—more than a year later. CHC asserts that the plaintiff's negligence claims against defendants CHMO, CHM, and CHC are thus barred by *Okla. Stat.* tit. 12, § 95(A)(11), which provides:

> All actions filed by an inmate or by a person based upon facts that occurred while the person was an inmate in the custody of one of the following:
>
> a. the State of Oklahoma,
>
> b. a contractor of the State of Oklahoma, or
>
> c. a political subdivision of the State of Oklahoma,

to include, but not be limited to, the revocation of earned credits and claims for injury to the rights of another, shall be commenced within one (1) year after the cause of action shall have accrued . . . .

The plaintiff failed to respond to this argument in his response briefs, and the Court finds that § 95 (A)(11) applies here. *See Koch v. Juber*, No. CIV-13-0750-HE, 2014 WL 2171753, at *2 (W.D. Okla. May 23, 2014) (holding that the more specific statute, § 95(A)(11), rather than the more general statute, § 95(A)(3), applied to state law claims based on facts that occurred while the person was in state custody); *Fisher v. Glanz*, Doc. 55 in Case No. 14-CV-678-TCK-PJC (Mar. 24, 2016) (same). Consequently, the motions to dismiss the plaintiff's second cause of action are **granted**.

## V. Conclusion

Defendant Correctional Healthcare Companies, Inc.'s Motion to Dismiss (Doc. 28) and defendant Correctional Healthcare Companies, Inc.'s Motion to Dismiss on Behalf of Correctional Healthcare Management of Oklahoma, Inc., and Correctional Healthcare Management, Inc. (Doc. 31) are hereby **granted in part and denied in part**.

ORDERED this 20th day of February, 2019.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE